UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM BIRDNECKLACE, | ) | CIV. 07-5008-AWB |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN YELLOW BIRD STEELE; | ) | |
| LISA ADAMS; | ) | |
| WILLIAM BREWER; | ) | |
| FLOYD BRINGS PLENTY; | ) | |
| JAKE LITTLE; | ) | |
| DON GARNIER; | ) | |
| ELLA JON CARLOW; | ) | |
| CAROL CRAZY THUNDER | ) | |
| O'ROURKE; | ) | |
| SONIA LITTLE HAWK; | ) | |
| TOM CONROY; | ) | **MEMORANDUM OPINION** |
| RON DUKE; | ) | |
| LYDIA BEAR KILLER; | ) | |
| CRAIG DILLON; | ) | |
| KIM CLAUSEN; | ) | |
| JIM MEEKS; | ) | |
| THOMAS POOR BEAR; | ) | |
| AUSTIN WATKINS, SR.; | ) | |
| CORA WHITING; | ) | |
| PHILIP GOOD CROW; | ) | |
| WESLEY CHUCK JACOBS; | ) | |
| GARFIELD STEELE; | ) | |
| KATHY JANIS; | ) | |
| ALBERTA IRON-CLOUD MILLER; | ) | |
| and OGLALA SIOUX TRIBE, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, William Birdnecklace, filed a pro se complaint alleging that defendants acted improperly in relation to the 2006 Oglala Sioux Tribe election

of the tribe's council.  After the Court dismissed several claims pursuant to Defendants' motion under Fed. R. Civ. P. 12(b)(1), Defendants filed a similar motion to dismiss under Rule 12(b)(6), or failure to state a claim on which relief can be granted.  Docket 48, 49, 58, 59.  Defendants have also filed several additional motions with this Court.  Docket 50, 51, 64, 65, 66, 67, 68, 69.  Plaintiff has thoroughly responded to all of Defendant's filings.  Docket 52, 53, 60, 61, 62, 63, 72, 73, 75, 76, 77, 78.  Additionally, Plaintiff filed a motion for default judgment.  Docket 44, 45.  All of these matters have been fully briefed for the Court, which is now prepared to dispose of the matters before it.

## BACKGROUND

Accepting all of Plaintiff's allegations as true, the following are the relevant facts:

All parties to this lawsuit are enrolled members of the Oglala Sioux Tribe (OST).  Elections of the OST Council are governed by the OST Constitution and Bylaws, which dictate specific requirements for conducting tribal elections as well as appeals protocols for individuals contesting an election.  After considering complaints about the September, 2006, primary election results, the tribe's Court of Election Appeals ruled the primary election "null and void" and ordered that a new primary be held.  Instead of conducting a new primary, the OST council removed the members of the Court of Election Appeals and appointed new members to the panel.  In response to tribal

members' complaints about the primary election, the new Court of Election Appeals reached the same conclusion as its predecessor and ordered a new primary, and the OST President and the outgoing OST council issued orders consistent with this demand for a new primary election.

However, the body charged with conducting the primary, the Election Board, did not conduct another primary and instead proceeded with the general election on November 6, 2006, through which a new tribal council was elected. The following named Defendants in this lawsuit were sworn in as OST council members on December 5, 2006: Steele, Brewer, Brings Plenty, Little, Garnier, Carlow, Crazy Thunder O'Rourke, Little Hawk, Conroy, Duke, Bear Killer, Dillon, Clausen, Meeks, Poor Bear, Watkins, Whiting, Good Crow, Jacobs, Steele, and Janis. Plaintiff alleges that Defendant Adams, as Chief Judge of the OST Tribal Courts, sanctioned the illegal swearing-in of the invalid OST council; additionally, he alleges charges of slander and defamation against Adams. As to Defendant Iron-Cloud Miller, Plaintiff makes similar defamation claims and alleges that she participated as OST Attorney General in the conspiracy with other defendants to assume and to maintain their official positions on the OST council.

After unsuccessfully filing a grievance with the Bureau of Indian Affairs Pine Ridge Superintendent, Plaintiff filed a complaint in this court on January 29, 2007. Plaintiff did not seek remedy within the OST court system. In an order dated September 25, 2007, this Court granted in part and denied in part

Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1). In that order, the Court stated, "The only claims that remain in this case are those against defendants in their personal capacity brought under 18 U.S.C. §§ 1962 or 1964(c) or 42 U.S.C. § 1985, or under state law." Docket 46, page 25-26.

## DISCUSSION

### I. Motion for Default Judgment

Plaintiff filed a motion for default judgment, asserting that Defendants' failure to answer his amended complaint requires such an order. Docket 44, 45. Plaintiff argues that Defendants' motions to dismiss under Fed. R. Civ. P. 12 are "fraudulent and facially void," and therefore Defendants' failure to answer is not excused under Rule 12.

Plaintiff is correct in saying that Rule 12(a) "requires Defendants to enter an answer to Plaintiff's Complaint within 20 days of service." Rule 12(b) provides that motions under this rule "must be made before pleading if a responsive pleading is allowed." Further, Rule 12(a)(4) provides that serving a motion under Rule 12 alters the 20-day time period to answer, and a responsive pleading must then be served within 10 days after notice of the court's action on the Rule 12 motion. In other words, Defendants must file their Rule 12 motions before answering Plaintiff's complaint, and Defendants must answer the complaint only after the Court has ruled on these Rule 12 motions.

Plaintiff filed his complaint on January 29, 2007. Defendants filed their motion to dismiss under Rule 12(b)(1) on February 21, 2007, less than 20 days after service of the complaint. The Court ruled on the motion to dismiss on September 25, 2007. On October 9, 2007, less than 20 days after the Court's order, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), and they later filed a Rule 12(f) motion as well.

Plaintiff is incorrect that Defendants' failure to file an answer at this stage in the litigation requires this Court to order a default judgment. Thus Plaintiff's motion for default judgment is denied.[1]

## II. Motion to Dismiss Complaint under Fed. R. Civ. Pro. 12(b)(6)

### A. Standard of Review for Rule 12(b)(6) Motions

Defendants move to dismiss Plaintiff's complaint, pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that the complaint fails to state a claim against them for which relief can be granted. "A complaint must not be dismissed under 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief.'" Doe v. Sch. Dist. of Norfolk, 340 F.3d 605, 613 (8th Cir. 2003) (quoting Gordon v. Hansen, 168

---

[1] Plaintiff also seems to argue that no answer submitted by the Defendants would be sufficient, as their "contemptuous and fraudulent claim to identity [as government officials] . . . can only result in a void judgment." Docket 45, page 5. The Court disagrees with the conclusion that any filing by Defendants would necessarily be void in its face because of the status of Defendants as fraudulent officials. See Docket 46. Therefore, the Court rejects Plaintiff's contention that default judgment is required for this reason.

5

F.3d 1109, 1113 (8th Cir. 1999)). "[W]e accept the complaint's factual allegations as true and construe them in a light most favorable to the plaintiff." Id. (citation omitted). The Eighth Circuit has emphasized that

> [a] complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997).

The Federal Rules provide that a motion under Rule 12(b)(6) must be converted to a summary judgment motion under Rule 56 if matters outside the pleadings are "presented to and not excluded by the court." Fed. R. Civ. P. 12(d). However, in order for such a conversion to a summary judgment motion to occur, "[t]here must be reliance by the district court on the matters outside the pleading." BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 688 (8th Cir. 2003) (citing Casazza v. Kiser, 313 F.3d 414, 418 (8th Cir. 2002)); see also Stahl v. U.S. Dept. of Agriculture, 327 F.3d 697, 701 (8th Cir. 2003) (finding that despite district court's statement that it had considered the "entire file," no conversion occurred because the additional "materials were irrelevant to its resolution of the merits of the motion").

Defendants submitted affidavits along with their motion to dismiss. See Docket 49. Plaintiff, in his response to Defendants' motion, also submitted additional documents along with his brief in opposition. See Docket 52.

However, in resolving Defendants' motions in this order, the Court does not rely upon or otherwise consider these matters outside the pleadings. Thus, no conversion to a summary judgment motion is required under the Federal Rules, and this Court is restricting its decision to Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted.

### B. Plaintiff's Claims Under 42 U.S.C. § 1985

In their motion to dismiss, Defendants first contend that Plaintiff was unable to vote in the contested election and, therefore, no deprivation of his civil rights occurred. Consequently, argue Defendants, the Plaintiff lacks standing to bring this action under 42 U.S.C. § 1985. Docket 48. In support of this motion, Defendants submitted an affidavit of Lisa Adams regarding Plaintiff's eligibility to vote in tribal elections. Docket 49-2. In response, Plaintiff indirectly contests this allegation, stating at one point that he can prove that he resides on the Pine Ridge reservation, Docket 53, page 21, and stating at another point that "the residency of Plaintiff in so far as it relates to the OST election process is irrelevant regarding the Defendants." Docket 78, page 10. Because the Court finds that Plaintiff's § 1985 action must be dismissed on its merits, the Court declines to make a factual determination as to whether Plaintiff lacks standing to bring the § 1985 action. In other words, even if Plaintiff was eligible to vote in the 2006 election and thus has standing to bring this action, Plaintiff can still prove no set of facts which would entitle him to relief under 42 U.S.C. § 1985, and thus the claim must be dismissed.

The United States Supreme Court has explained the pleading requirements for a § 1985(3) claim:

> To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'

Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S. Ct. 1790, 29 L. Ed. 2d 338 (1971). Further, the Supreme Court in Griffin stated that part (2) of these necessary allegations includes the requirement that a plaintiff demonstrate intent to deprive of equal protection, which "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 102. See also Shortbull v. Looking Elk, 677 F.2d 645, 648 (8th Cir. 1982) (dismissing case brought by non-enrolled Indian because this classification was not invidious); Means v. Wilson, 522 F.2d 833, 839 (8th Cir. 1975) (finding this discriminatory animus against a class based on their political beliefs); Indian Political Action Comm. v. Tribal Exec. Comm. of Minnesota Chippewa Tribe, 416 F. Supp. 655 (D. Minn. 1976) (dismissing case involving election dispute because of absence of discriminatory animus).

After a thorough reading of Plaintiff's pleadings, the Court can find no allegations of any class-based invidious discrimination of the type required for a § 1985(3) claim. Plaintiff certainly claims the presence of personal animus between himself and some Defendants, but this by itself is irrelevant and unhelpful to his § 1985 claim. See Shortbull, 677 F.2d at 649 (stating that "Shortbull's allegation that appellees discriminated against him because of his individual political opposition to them is not actionable under § 1985(c)"). The only relevant class in which Plaintiff could possibly claim membership is the class of all tribal members eligible to vote in OST tribal elections. Indeed, Plaintiff claims in his pleadings that he is seeking to vindicate the right of all eligible voters to cast their votes in a valid election. Docket 53, page 14 (stating that "The Defendants . . . have discriminated a right to vote against Oglala Sioux Tribe Enrolled Members, of which Plaintiff is a part").

Here, the Court believes that any classification of Plaintiff and others as eligible voters is not invidious at all, and is merely a functional distinction well within the tribe's sovereign authority. See id. at 650 (stating that the right of a tribe to define who is eligible to vote must be viewed as "central to [the tribe's] existence as an independent political community") (citing Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n.32, 90 S. Ct. 1670, 56 L. Ed. 2d 106 (1978)). Plaintiff's pleadings fail to demonstrate that the tribe discriminated against a protected class of tribal members; to the contrary, it seems clear from Plaintiff's submissions that eligible voters were able to vote in both the primary and

9

general election.  It is clear to this Court that Plaintiff has not demonstrated that Defendants engaged in the type of invidious discrimination at which § 1985 is directed, where "[t]he ultimate test, of course, is whether the classification is sufficiently 'invidious' so as to fall within the statute's ambit." See Shortbull, 677 F.2d at 649-50 (finding that class-based claim by non-enrolled member of tribe "failed to demonstrate that the exclusion of non-enrolled members of the Tribe as a class is invidiously discriminatory"). Cf. Means, 522 F.2d at 840 (finding that defendants discriminated against a class of plaintiffs because of their political beliefs and involvement in the American Indian Movement).

Because the Court finds that Plaintiff can prove no set of facts to demonstrate the discriminatory animus required by 42 U.S.C. § 1985, Defendants' motion to dismiss this claim under Fed. R. Civ. P. 12(b)(6) is granted.

**C.   Plaintiff's RICO Claims**

In their motion to dismiss, Defendants first claim that "election disputes and allegations election violations are intra-tribal in nature. [Thus, they] are a 'non-justiciable intra-tribal matter.'" Docket 49, page 6.  Secondly, Defendants argue that Plaintiff has failed to adequately plead the necessary elements of his § 1962 action.  Id.  Specifically, Defendants state that RICO claims require that the conduct affect or influence interstate or foreign commerce before federal jurisdiction is appropriate, and that Plaintiff merely describes activities which

10

allegedly took place on the Pine Ridge reservation. Id. at 7. Finally, Defendants argue several reasons that Plaintiff would not be entitled to damages under RICO. Id. at 7-10.

As a reply, Plaintiff offers the Court an extensive list of all of the predicate acts he alleges under § 1962(b), (c), and (d) as well as citations to a wide variety of RICO cases.[2] Docket 53, page 3-6, page 6-13 (alleging mail fraud, bank fraud, and conspiracy to unlawfully procure citizenship, among other things). Further, Plaintiff argues that the Defendants formed a criminal enterprise when they illegally assumed the position of elected officials, and that Defendants' improper involvement in tribal court operations led to their infiltration of his legal practice due to the "interdependent" and "inseparable" nature of a law office and the court system. Id. at 15-16. Finally, Plaintiff addresses the interstate commerce element of RICO, stating that the OST council's activities reach outside of the reservation. Id. at 18-19.

18 U.S.C. § 1964(c) dictates who can bring a civil RICO suit. That provision reads:

---

[2] In their motion to strike portions of Plaintiff's briefs, Docket 68, Defendants argue that the portion of Plaintiff's brief which discusses the alleged racketeering conduct of Defendants should be stricken under Fed. R. Civ. P. 12(f). Although the Court considered these challenged portions of Plaintiff's briefs in making today's determination, the Court declines to render a decision on Defendant's motion to strike. Instead, in light of the Court's dismissal of Plaintiff's RICO claims, the Court denies this motion to strike on the grounds that it is now moot.

> Any person injured in his business or property by reasons of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]

"If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 495, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) (stating that a plaintiff has standing only if "he has been injured in his business or property by the conduct constituting the violation"). The United States Supreme Court has further clarified that this provision contains a "directness" requirement, restricting possible plaintiffs only to those whose injuries were proximately caused by defendant's racketeering conduct. Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268, 271-72, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992) (inferring the direct-injury limitation in RICO from language taken from the Clayton Act and refusing to adopt a but-for causation approach); United Healthcare Corp. v. Amer. Trade Ins. Co., 88 F.3d 563, 572 (8th Cir. 1996) (stating "In the RICO context, proximate causation requires 'some direct relation between the injury asserted and the injurious conduct alleged'") (citing Holmes). See also Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457-58, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) (dismissing Plaintiff's suit based upon Defendants' conduct to defraud the State of New York because of the attenuated link between plaintiff's harms and the alleged

RICO violations); <u>Hamm v. Rhone-Poulenc Rorer Pharm., Inc.</u>, 187 F.3d 941, 952-53 (8th Cir. 1999) (dismissing RICO claim when "appellants were not the intended targets of the fraudulent scheme [and hence t]heir injuries were derivative and incidental, not direct"). This directness requirement for RICO standing arose from the difficulty in ascertaining and apportioning damages when the injury is far removed from the misdeeds as well as courts' desire to avoid such indirect suits when "directly injured victims can generally be counted on to vindicate the law as private attorneys general," as the drafters of RICO intended. <u>Holmes</u>, 503 U.S. at 269-70.

In this case, Plaintiff alleges violations of § 1962 for mail fraud, bank fraud, and illegal procurement of citizenship. Docket 53, pages 3-6. However, Plaintiff's claim for damages to his legal practice arises not out of such activity but out of the supposed interconnected nature of the OST legal system and his legal practice. Thus, Plaintiff claims, in "illegally [taking] controlling interest in the OST government and the OST Courts by acts of racketeering," the Defendants in effect infiltrated his law practice, "rendering the Plaintiff and such business helpless without recourse." <u>Id.</u> at 15, 16.

This Court finds that Plaintiff lacks standing under § 1964(c) to bring this claim. Even assuming that all of Plaintiff's claims are true, Plaintiff cannot demonstrate that any damages to his business are proximately caused by the alleged racketeering conduct of Defendants. See <u>Lyons v. Philip Morris, Inc.</u>, 225 F.3d 909, 914 (8th Cir. 2000) (finding that plaintiffs lacked standing to

13

bring RICO claim for an "indirect injury"); Hamm, 187 F.3d at 954 (dismissing case when injury was not result of defendant's racketeering activity but arose from other conduct of defendant).  Here, all of the damages to his legal business which Plaintiff is seeking are incidental and indirect to Defendants' alleged racketeering activities.  Plaintiff fails to point to a sufficient connection between Defendants' alleged mail fraud, bank fraud, and illegal procurement of citizenship and the damages he claims to his legal practice.  Indeed, it seems to this Court that the only connection between the two sets of allegations is the identity of the alleged conspirators – a  connection which is far less than the proximate cause required by the statute.  For these reasons, Plaintiff's RICO claims are dismissed under Fed. R. Civ. P. 12(b)(6).

### D.     Plaintiff's Claims under State Law

In its earlier order, the Court stated that it retained jurisdiction over the subject matter in the remaining state law claims against Lisa Adams and Alberta Iron-Cloud Miller through supplemental jurisdiction under 28 U.S.C. § 1367.  Docket 46, page 17 n.2, page 20 n.3.  Section (c) of 28 U.S.C. § 1367 provides: "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." Today the Court dismisses all remaining federal claims before it, and thus declines to exercise supplemental jurisdiction over any remaining state or tribal claims.  Consequently, such claims in this suit are also dismissed.

## CONCLUSION

As stated above, Plaintiff's motion for default judgment is denied. Further, all of Plaintiff's claims under 42 U.S.C. § 1985 and 28 U.S.C. § 1962 and 1964 are dismissed pursuant to Defendants' motion, and the Court also dismisses those state claims over which this Court chooses not to retain supplemental jurisdiction. As for the remaining motions from Defendants before this Court, in particular the Motions for Relief from Judgment under Rule 60 and Motion to Strike under Rule 12(f), these motions are denied as moot.

For the reasons stated above, it is hereby

ORDERED that Plaintiff's Motion for Default Judgment, Docket 44, is DENIED.

IT IS FURTHER ORDERED that Defendants' Motions to Dismiss Plaintiff's First Amended Complaint, Docket 48, is GRANTED.

IT IS FURTHER ORDERED that Defendant Alberta Iron-Cloud Miller's Supplemental Motion to Dismiss, Docket 58, is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant Alberta Iron-Cloud Miller's Motion for Leave to File Supplemental Motion for Relief from Judgment Pursuant to Rule 60, Docket 64, is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motions for an Order Granting Relief from Judgment Pursuant to Fed. R. Civ. P. 60, Docket 50 and Docket 66, are DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendants' Motion to Strike Plaintiff's Briefs Pursuant to Rule 12(f), Docket 68, is DENIED AS MOOT.

Dated April 11, 2008.

BY THE COURT:

/s/ Andrew W. Bogue
ANDREW W. BOGUE
SENIOR DISTRICT JUDGE